IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:18-CR-75 (MAD) |
| | ) | |
| v. | ) | |
| | ) | |
| **OLAF TEPPER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**United States' Sentencing Memorandum**

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum respectfully requesting that the Court sentence defendant Olaf Tepper to a 57-month term of imprisonment, as well as to pay a fine of $10,000.

On March 16, 2018, without a plea agreement, the defendant pled guilty to a one-count information, charging conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and United States-imposed sanctions against Iran (often referred to as the Iranian Transactions and Sanctions Regulations, "ITSR").

The defendant is scheduled to be sentenced on August 3, 2018.

1.   **Introduction and Factual Background**

The Government adopts the facts as set forth in the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office.  PSIR ¶¶ 2-3.  The defendant is a German citizen who pled guilty on March 16 to conspiring to violate IEEPA and U.S. sanctions against Iran.  He admitted to conspiring with Mojtaba Biria ("Biria") and others to acquire about $1 million worth of energy turbine parts from a company in Saratoga Springs, New York.  The parts would have been shipped to Germany and then immediately re-shipped to Iran, as part of a

scheme to willfully violate U.S. export control laws.  The defendant was arrested on November 20, 2017 in Saratoga Springs.  He has been in custody since that day.

**2.     Statutory Maximum Punishments**

Maximum term of imprisonment: 20 years, pursuant to 50 U.S.C. § 1705(c).

Maximum fine: $1 million, pursuant to 50 U.S.C. § 1705(c).

Supervised release term: In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment.  *See* 18 U.S.C. § 3583(b)(2).  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.  *See* 18 U.S.C. § 3583(e)(3).  As the defendant is a foreign national, with no lawful status in the United States, the Court should not impose a term of supervised release.

**3.     Guidelines Provisions**

**3.1     Criminal History Category**

The United States adopts the PSIR's conclusion that the defendant's criminal history category is I.  PSIR ¶¶ 26-30.

**3.2     Offense Level**

The United States adopts the Sentencing Guidelines calculation set forth in the PSIR, resulting in a total offense level of 25.  PSIR ¶¶ 10-14, 20-25.

The PSIR, at ¶ 14, correctly scores a 2-level adjustment, pursuant, to USSG §3B1.1(c), for the defendant's having been an organizer, leader, manager or supervisor or others in the offense. The defendant was the founder, owner and managing director of Energy Republic, which was engaged in criminal activity for close to a decade: the acquisition and attempted acquisition of energy turbine parts from a U.S. company, for ultimate delivery to end users in Iran. PSIR ¶¶ 2(b), 9, 40.

The defendant managed and supervised at least one other person as part of the criminal conduct: the person referred to as "Energy Republic Employee." For instance, on October 26, 2017, at the defendant's direction, Energy Republic Employee sent to "Representative A," in Saratoga Springs, a spreadsheet of business transactions that listed at least one Iranian city as a destination for energy turbine parts. PSIR ¶ 2(i). Following a conversation between Representative A, the defendant and Biria in Saratoga Springs, this issue was corrected the following day when, again at the defendant's direction, Energy Republic Employee sent a corrected and altered spreadsheet that omitted any mention of Iran, in furtherance of, and in order to conceal, the conspiracy and its goals. PSIR ¶¶ 2(i), (k)-(m).

### 3.3   Guidelines Range and Sentence

As described above, the defendant's total offense level is 25 and his criminal history category is I. As a result, the Sentencing Guidelines advise that the defendant receive a sentence of 57-71 months in prison. PSIR ¶ 48. As this range is in Zone D of the Guidelines, the minimum term of the Guidelines range – here, 57 months – should be satisfied by a term of imprisonment. U.S.S.G. § 5C1.1(f), cmt. 9.

4.      **Sentencing Recommendation**

      4.1     **Term of Imprisonment**

The Government respectfully asks that the Court impose a 57-month term of imprisonment and a $10,000 fine.  Such a sentence would be sufficient but not greater than necessary to achieve the goals set out in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the nature and seriousness of the offense, the history and characteristics of the defendant, and the need to deter people situated similarly to the defendant.  A Guidelines term of imprisonment is reasonable and proper in view of the goals of sentencing.  The Government agrees with the PSIR's conclusion that there is no reason to impose a sentence outside out of the Guidelines range.  PSIR ¶ 66.

      **Nature and seriousness of the offense:** IEEPA and related authorities permit the Executive Branch to use its law enforcement power to effectuate the foreign policy goals of the United States: here, to address the "unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" posed by Iran, a state sponsor of terrorism and so designated as of January 1984.  PSIR ¶ 1(b)-(d); 50 U.S.C. § 4605(j) (designation authority); *see* U.S. State Department, "State Sponsors of Terrorism," available at https://www.state.gov/j/ct/list/c14151.htm (last visited June 27, 2018).  "[T]o reform the actions of the government of Iran . . . the [ITSR] adopt a blunt instrument: broad economic sanctions intended to isolate Iran."  *United States v. Banki*, 660 F.3d 665, 673 (2d Cir. 2011) (internal citations omitted).  By repeatedly evading the restrictions of the ITSR, the defendant undermined the efficacy of the economic sanctions that are intended to protect the national security of the United States.  Persons who evade national security controls or who regularly engage in transactions with countries that support international terrorism should be punished

4

harshly regardless of whether the conduct at issue directly furthers Iran's nuclear program or military.  *See, e.g.*, *United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 146 (2d Cir. 2004) (affirming 70-month prison sentence, imposed following a jury trial, for transferring $277,045 from the United States to Iran, among other conduct).

The defendant's violation was serious, both because it flouted the U.S. embargo against Iran and also because the energy turbine parts he was sending, and planning to send, are important to Iran's ability to generate power.  The defendant was using, and planning to use, U.S. goods to help keep the lights on in a state sponsor of international terrorism.  This is why, among other reasons, the base offense level is appropriately scored as a 26.  U.S.S.G. § 2M5.1(a)(1)(B).  *See, e.g.*, *United States v. Hanna*, 661 F.3d 271, 294 (6th Cir. 2011) (holding that any transaction prohibited by the Executive Order implicated Section 2M5.1(a)(1), whether or not the goods are intended for some seemingly innocent use).

**History and characteristics of the defendant:** the defendant's conduct was not a momentary mistake.  Rather, it was part of a decade-long scheme to supply U.S. goods to end users in Iran.  The defendant founded Energy Republic in 2008, and nearly all of its customers were located in Iran.  PSIR ¶¶ 2(c), 9.  The defendant spent years exporting Company A's goods to Iran.  PSIR ¶¶ 2(c)-(e), 9.  His company was successful only because of its willingness to violate U.S. sanctions.  The defendant was not an honest businessman who made an isolated blunder.  Rather, the defendant's entire company was predicated on its willingness to violate U.S. law, and to reap illicit profits from transactions that more reputable European companies would not have engaged in.  The fact that the defendant's transactions were not related to Iran's nuclear program or military objectives is of little significance.  He helped Iran maintain its aging power infrastructure (with U.S. parts, no less), whereas U.S. sanctions seek to undermine it.

Motivated by profit, the defendant was thwarting important economic controls that were put in place to protect the national security of the United States.

**The need to deter:** there are companies and individuals situated similarly to the defendant, who must be deterred from violating the U.S. embargo against Iran, and specifically from sending U.S. goods to Iran that help Iran maintain critical infrastructure. The punishment imposed should serve as an effective counterbalance to the profit motive of people who are violating, or may be contemplating a violation of, U.S. export control laws.

The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed R. Crim. P. 32(h), (i)(1)(c).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

Respectfully submitted this 27th day of June, 2018

                                         GRANT C. JAQUITH
                                         United States Attorney

                                         By: */s/ Michael Barnett*
                                         Richard D. Belliss and Michael Barnett
                                         Assistant United States Attorneys
                                         Bar Roll No. 515295 and 519140